IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES M. PLEVYAK, II, | ) | Case No.  4:16 CV 218 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHELLE MILLER, WARDEN, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.    Introduction

Petitioner James Plevyak, II, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Plevyak*, Case No. 2011-CR-00515.  ECF Doc. No. 1.  Respondent Warden Michelle Miller[1] has filed a return of writ.  ECF Doc. No. 7.  And Plevyak has filed a traverse.  ECF Doc. No. 12.

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Plevyak's petition or other case-dispositive motions.[2]  Because Plevyak has presented only a non-cognizable state-law claim and has not demonstrated that the state courts' handling of that issue was so fundamentally unfair as to amount to an abridgment of his federal constitutional rights, I recommend that the Court dismiss Plevyak's petition.

---

[1]  Michelle Miller is Warden of the Belmont Correctional Institution in St. Clairsville, Ohio, where Plevyak is incarcerated.  ECF Doc. No. 7 at Page ID# 27.
[2]  This matter originally was referred to Magistrate Judge Greg A. White; upon Judge White's retirement it was referred to the undersigned.

## II.      Factual Background

Ohio's Eleventh District Court of Appeals set forth the following facts underlying

Plevyak's convictions:

> {¶ 3} Athena R. ("Athena") is a single mother who lived in Niles, Ohio with
> her two sons during 2010, the time the events charged occurred. Athena's
> two children are Z.R., the victim in this case, who was nine years old at the
> time, and J.R. (Z.R.'s younger brother), who was three. Z.R.'s grandfather
> had dated Plevyak's mother, Sandra, for several years. Sandra Plevyak
> frequently babysat Z.R. and J.R. while Athena worked as a waitress.
>
> {¶ 4} Plevyak, who was 28 years old at the time, often helped his mother
> babysit the boys. Appellant spent most of his time with Z.R. in an upstairs
> bedroom playing video games while his mother babysat J.R. on the first
> floor. Z.R. testified that Plevyak frequently exposed his penis to Z.R. while
> they were alone upstairs, and that Plevyak also masturbated in front of him.
> Plevyak also showed Z.R. pornographic videos and photographs on his cell
> phone.
>
> {¶ 5} Eventually, Plevyak began touching Z.R. by putting his hand down
> Z.R.'s underwear. Plevyak also bathed Z.R., washing his genital area with
> his soapy bare hands. Z.R. testified that on one occasion, appellant took off
> his clothes and got into the tub with him. According to Z.R., appellant told
> the boy not to tell anyone about these encounters.
>
> {¶ 6} After a year of these activities, Z.R. told his mother what was
> occurring. After Z.R. and his mother reported these events to the Niles
> Police, Plevyak agreed to be interviewed. He admitted giving Z.R. a bath
> and a shower. Plevyak agreed to take a stipulated polygraph wherein he
> denied he had engaged in any sexual touching of Z.R.'s genitals. The
> polygraph examiner testified Plevyak exhibited signs of deception
> regarding the question.

*State v. Plevyak*, 2014-Ohio-2889, ¶¶ 3-6.

These facts "shall be presumed to be correct," unless petitioner rebuts them by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998).

### III.    Relevant State Procedural History

####   A.    Trial Court

On September 1, 2011, a Trumbull County Grand Jury indicted Plevyak on four counts of gross sexual imposition, in violation of Ohio Rev. Code § 2907.05(B) and (C)(2), and one count of disseminating matter harmful to juveniles, in violation of  Ohio Rev. Code § 2907.31(A)(1) and (F).  ECF Doc. No. 7-1 at Page ID# 45-49.  Plevyak pleaded not guilty to all charges.  ECF Doc. No. 7-1 at Page ID# 50.

On October 26, 2011, Plevyak agreed to take a polygraph examination and stipulated that conclusive results would be admissible at trial.  ECF Doc. No. 7-1 at Page ID# 51-54.  The polygraph examination was administered on November 1, 2011.  ECF Doc. No. 7-1 at Page ID# 55.  On February 19, 2013, Plevyak moved *in limine* to exclude the results of the examination on the ground that it "was not conducted under the proper conditions, and the test questions were so improperly phrased, that the questions could not be properly asked for the purposes of a polygraph examination."  ECF Doc. No. 7-1 at Page ID# 55.  The trial court denied the motion. ECF Doc. No. 8 at Page ID# 226.

Page IDA jury found Plevyak guilty on three counts of gross sexual imposition and not guilty on the remaining count of gross sexual imposition on February 22, 2013.  ECF Doc. No. 7-1 at Page ID# 58-61.  The court dismissed the charge of disseminating matter harmful to juveniles upon the state's motion.  ECF Doc. No. 7-1 at Page ID# 62-63.

On April 10, 2013, the trial court conducted imposed a three year prison term on each count of gross sexual imposition, to be served consecutively, for an aggregate sentence of nine years.  ECF Doc. No. 7-1 at Page ID# 64-66.  The trial court issued a *nunc pro tunc* judgment

entry of sentence on August 7, 2013, providing notice that Plevyak was required to register as Tier III Sex Offender.  ECF Doc. No. 7-1 at Page ID# 67-69.

> ### B.    Direct Appeal

Plevyak, through new counsel, filed a timely notice of appeal in the Ohio Court of Appeals.  ECF Doc. No. 7-1 at Page ID# 70-77.  Plevyak's appellate brief, presented two assignments of error:

> 1.    The trial court erred, both as a matter of law and as an abuse of its discretion, by permitting the Appellee to introduce evidence of other alleged bad acts of Appellant, to the prejudice of the Appellant.
>
> 2.    The Appellant's convicitons [*sic*] are against the mainfest [*sic*] weight of the evidence.

ECF Doc. No. 7-1 at Page ID# 79-80 (capitalization altered).  On June 30, 2014, the state appellate court affirmed the judgment of the trial court.  ECF Doc. No. 7-1 at Page ID# 121-39; *Plevyak*, 2014-Ohio-2889.

Plevyak, through the same appellate counsel, filed a timely notice of appeal to the Ohio Supreme Court.  ECF Doc. No. 7-1 at Page ID# 140-41.  His memorandum in support of jurisdiction asserted one proposition of law:

> A trial court commits reversible error, both as a matter of law and under an abuse of discretion standard, by admitting alleged other bad acts of a criminal defendant, where the record reveals that: (1) the State did not provide proper notice of its intent to use such at trial pursuant to the requirements of Evidence Rule 404(B) and the Due Process Clause of the 14th Amendment to the United States Constitution; and (2) the trial court conducted no analysis of the admissibility of the other bad acts.

ECF Doc. No. 7-1 at Page ID# 143 (capitalization altered).  The court declined to accept jurisdiction of the appeal on January 28, 2015.  ECF Doc. No. 7-1 at Page ID# 195.

## IV.     Federal Habeas Corpus Petition

Plevyak, through his state appellate counsel, filed his federal petition for writ of habeas corpus on January 28, 2015.[3]  ECF Doc. No. 1.  His petition raises the following grounds for relief:

> A trial court violates a criminal defendant's constitutional rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution by permitting extensive evidence by the State of a criminal defendant's other bad acts in violation of state notice requirements concerning such and conducting no analysis of the admissibility of said other bad acts.

ECF Doc. No. 1 at Page ID# 17.  Respondent filed a return of writ on March 17, 2016.  ECF Doc. No. 7.  And Plevyak filed a traverse on June 6, 2016.  ECF Doc. No. 12.

## V.     Standards of Review

### A.     AEDPA Review

Plevyak's petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because it was filed after the Act's 1996 effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a

---

[3] Plevyak originally filed his petition in the United States District Court for the Southern District of Ohio, which transferred it to this Court on January 29, 2016.  *See* ECF Doc. No. 2.

formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id*.

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S.

3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).  The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."  *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under

*de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456

U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining procedural default, the federal court again looks to the last explained state-court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id.* at 732-33.  To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[4]

---

[4] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined the now familiar test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule.  It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "ordinary appellate review procedures," and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674,

---

foreclose federal review of a federal constitutional claim. Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[5]

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C. Cognizability

To the extent that claims asserted in federal habeas petitions allege purely state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether

---

[5] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

"(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6ᵗʰ Cir. 1988).

However, state-court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6ᵗʰ Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). They must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6ᵗʰ Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.*

## VI.    Analysis

Plevyak's sole ground for relief challenges the trial court's admission of "other acts" evidence.  ECF Doc. No. 1 at Page ID# 17-18.  Specifically, he argues that the victim should not have been permitted to testify that Plevyak "had touched him in his private parts on many occasions, had tried to make [the victim] touch [Plevyak's] private parts on several occasions and, on one occasion, had laid on top of [the victim] on a bed when they were both fully clothed, *none of which concerned the pending charges.*"  ECF Doc. No. 1 at Page ID# 17 (emphasis original).  He also complains about the victim's testimony that Plevyak "had allegedly used the term 'cock meat sandwich' in front of [the victim] and how [Plevyak] would wash him in the bathtub on many occasions."  ECF Doc. No. 1 at Page ID# 18.  Respondent argues the claim is meritless.  ECF Doc. No. 7 at Page ID# 40-41.

The Eleventh District Court of Appeals, the last state court to address this claim, rejected it.  *Plevyak*, 2014-Ohio-2889, ¶¶ 11-34.  The state appellate court first set forth Ohio law regarding other acts evidence, stating:

> {¶ 11} By his first assignment of error, Plevyak argues the trial court committed reversible error, both as a matter of law and under an abuse of discretion standard, by admitting the other acts evidence. Specifically, he alleges the state failed to provide notice of its intent to use such evidence under Evid.R. 404(B), and that the trial court failed to conduct the required analysis for the admissibility of these other acts.

> {¶ 12} Evid.R 404 concerns the use of evidence of other crimes, wrongs or acts. Other acts evidence is inadmissible to show a defendant's allegedly bad character. Evid.R 404 was amended in 2012 to adopt a notice requirement. The new provision requires the proponent of such evidence to provide reasonable notice "in advance of trial, or during trial if the court excuses pretrial notice on good cause shown * * *." Evid.R. 404(B). The Ohio rule is now similar to the federal rule which requires reasonable notice of the general nature of any such evidence in order to prevent unfair

surprise. *United States v. Lucas*, U.S. Dist. Court, Northern Ohio, 2009 U.S.
Dist. LEXIS 123884, *18.

*Plevyak*, 2014-Ohio-2889, ¶¶ 11-12.

The state court then found that while the trial court may have committed error in

admitting the other acts evidence when the defense did not receive pretrial notice of it, any error

was harmless.  It reasoned:

{¶ 13} On the morning of trial, Plevyak's counsel made an oral motion in
limine to exclude evidence of "other acts" under Evid.R. 404(B) and R.C.
2945.59. These acts included additional incidents of Plevyak exposing
himself and masturbating in front of Z.R., for which he was not charged.
Trial counsel asserted he was not provided reasonable notice of the state's
intent to bring other acts into evidence.

{¶ 14} The assistant prosecutor responded there was no requirement for the
state to put defense counsel on notice of its intention to introduce evidence
of other acts by Plevyak. The assistant prosecutor argued these other acts
were inextricably interwoven with the other facts in the case, and that failure
to describe these acts would prevent the jury from forming a fair and
accurate picture of events. The assistant prosecutor also noted that all the
information regarding these other acts had been made available to defense
counsel under open file discovery.

{¶ 15} In response to questioning from the trial court, defense counsel
admitted he had been aware for some time of these other acts and was not
surprised the state intended to use them in its case. The trial court then
denied the motion in limine. During trial, defense counsel objected
regarding these "other acts" during Z.R.'s testimony and the testimony of
William Evans, the forensic polygraphist who conducted the stipulated
polygraph.

{¶ 16} The state asserted at oral argument that Evid.R. 404(B) does not
require notice to the defendant of these "other acts" as they are inextricably
interwoven with the essential facts of the case. The state argued that these
"other acts" were blended; essentially part and parcel of the crimes charged
and therefore no notice was required. We disagree.

14

{¶ 17} Several of these "other acts" involved acts that occurred weeks and months apart from the crimes with which Plevyak was charged. Under Evid.R. 404(B) other acts may be admissible to show the background of the crimes with which a defendant is charged, or when the other acts are " 'inextricably related' " to those crimes. *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616, quoting *State v. Curry*, 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975). That these "other acts" are inextricably interwoven with the primary facts in the case goes to the issue of their admissibility-not whether the state was required to provide notice to the defendant under Evid.R. 404(B).

{¶ 18} The state also averred at oral argument that open file discovery provided Plevyak with knowledge of the "other acts" evidence and this was equivalent to giving him notice of the state's intent to use this evidence. Again, we disagree. There is a difference between a defendant knowing the state possesses "other acts" evidence and a defendant knowing the state intends to use it at trial. A defendant's decision to go forward at trial may well depend on what evidence the state intends to introduce. If providing discovery alone were sufficient to satisfy the notice requirements of Evid.R. 404(B) the rule would be superfluous. Statutes and rules are to be construed so as to avoid such unreasonable or absurd results. *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 838 N.E.2d 658, 2005–Ohio–6432, ¶ 28.

{¶ 19} The federal rule, upon which Evid.R. 404(B) is based, requires reasonable notice of the general nature of these "other acts" in order to prevent unfair surprise. Lucas, supra. Whether notice is "reasonable" will depend on the facts and circumstances of each case.

{¶ 20} In the present case Plevyak received notice of the state's intent to introduce "other acts" evidence on the morning of trial. Plevyak's defense counsel acknowledged he was aware of the other acts evidence from open file discovery, and was not surprised by the state's intent to introduce this evidence at trial. As such Plevyak was not prejudiced by the lack of pretrial notice.

{¶ 21} Further, the Staff Notes to the 2012 Amendment to Evid.R. 404 state the rule on notice "should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." The assistant prosecutor told the trial court there was no

requirement the state provide defense counsel with notice. While we disagree with the assistant prosecutor's interpretation of the rule we are not prepared to say that this interpretation is tantamount to bad faith. There is no evidence that the prosecutor acted in bad faith-that is, withholding notice of the "other acts" in order to gain a tactical advantage at trial. Even Plevyak in his brief does not accuse the state of acting in bad faith.

{¶ 22} The notice provision in the federal rules upon which the amendment to Evid.R. 404(B) is based is meant to prevent unfair surprise. Plevyak cannot demonstrate either unfair surprise or prejudice through the lack of pretrial notice of these other acts. As there is no evidence the state withheld such notice in bad faith, any error in failing to provide pretrial notice was harmless.

*Plevyak*, 2014-Ohio-2889, ¶¶ 13-22.

Finally, of relevance here, the state appellate court determined that the trial court did not abuse its discretion in admitting the other acts evidence.  It opined:

{¶ 23} Next we turn to Plevyak's claim the trial court abused its discretion by allowing evidence of these other acts to be admitted. The decision whether to admit or exclude relevant evidence lies within the discretion of the trial court. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An appellate court will not reverse that decision absent an abuse of discretion and a showing of prejudice. *Id.* The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 892 N.E.2d 454, 2008–Ohio–1720, ¶ 15 (8th Dist.)

{¶ 24} Evidence an accused committed a crime, other than that for which he or she is on trial, is not admissible when its sole purpose is to show the defendant's propensity or inclination to commit crime. *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,]" but may be admissible for other purposes. Evidence of other crimes, wrongs, or

16

bad acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Such evidence is "not admissible to prove the character of a person in order to show action in conformity therewith * * *." *State v. Morris*, 132 Ohio St.3d 337, 972 N.E.2d 528, 2012–Ohio–2407, ¶ 18.

{¶ 25} Plevyak argues the state could have easily elicited testimony from Z.R. and the other witnesses about only those acts which constituted the crimes charged, and the case still would have made sense to the jury. At the pretrial hearing the assistant prosecutor argued these other acts were "inextricably intertwined" with the conduct of Plevyak and the lack of such evidence would prevent the jury from seeing a fair and accurate picture of the crimes charged. The state's position has merit.

{¶ 26} Evidence of other acts may be admissible to show the background of the crimes with which a defendant is charged, or when the other acts are " 'inextricably related' " to those crimes. *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994), quoting *Curry, supra*, at 73, 330 N.E.2d 720. Z.R. testified that Plevyak would frequently expose his penis to Z.R. while they were alone upstairs; that Plevyak would masturbate in front of him; and that he would put Z.R.'s hand on his (Plevyak's) penis. *See State v. Frost*, 6th Dist. Lucas Nos. L–06–1142 and L–06–1143, 2007–Ohio–3469, ¶ 33 (other acts evidence shows that defendant committed similar crimes against the same victim within a period of time near to the crimes charged); *State v. Walker*, 8th Dist. Cuyahoga No. 79767, 2002 Ohio App. LEXIS 1599, *8 (other acts were inextricably related to the defendant's alleged course of conduct and formed a background necessary to give a complete picture of the alleged crime; child victim's testimony about previous sexual advances played an integral part in explaining the sequence of events and was necessary to give the jury a complete picture of the crimes with which defendant was charged).

{¶ 27} Plevyak next argues that the Ohio Supreme Court has instructed courts to conduct a three step analysis to determine whether other acts evidence is admissible. *State v. Williams*, 134 Ohio St.3d 521, 983 N.E.2d 1278, 2012–Ohio–5695 ¶ 19. He claims the trial court failed to conduct the analysis necessary to admit evidence of other acts.

{¶ 28} "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of

the action more or less probable than it would be without the evidence." *Id*. at ¶ 20, 983 N.E.2d 1278 citing Evid.R. 401. The second step is to "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether [it] is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id*. "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id*., citing Evid.R. 403.

{¶ 29} As to the first step of the *Williams* test, Z.R.'s testimony was relevant because it showed Plevyak's actions escalated from exposing himself, to masturbating in front of Z.R., then to touching Z.R.'s genitalia. Such testimony explains the sequence of events leading up to the crimes charged as well as provides evidence regarding one of the elements of the offense: that Plevyak committed these acts for the purpose of sexual gratification.

{¶ 30} The second step relates to whether the evidence was presented to prove Plevyak's character and to show that the conduct was in conformity with that character. The court in *Williams* determined the potential prejudice is lessened when the trial court instructs the jury that other acts evidence is not introduced as character evidence. *Williams, supra*, at ¶ 23. Here, the trial court gave a limiting instruction to the jury that this evidence could not be considered to prove Plevyak's character, or that he acted in conformity with that character. We presume the jury followed those instructions. *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990).

{¶ 31} Third, we consider whether the probative value of the other acts evidence of Plevyak's escalating behavior is substantially outweighed by the danger of unfair prejudice. This evidence was not unduly prejudicial as the trial court instructed the jury it could not be considered to show that appellant had acted in conformity with a character trait. *Williams, supra*, at ¶ 24.

{¶ 32} Further, the state contends any error in admitting the other acts testimony was harmless. We agree. The admission of improper evidence is harmless if the remaining evidence provides overwhelming proof of the defendant's guilt. *State v. Sage*, 31 Ohio St.3d 173, 181, 510 N.E.2d 343 (1987). The testimony of Z.R., even without the other acts evidence, is compelling and credible. The alleged inconsistencies in Z.R.'s testimony

noted by Plevyak mostly relate to the fact that as time went on, Z.R. revealed more details of his experiences with Plevyak. The testimony of Z.R.'s mother, David Smith, the Children Services caseworker and Daniel Adkins of the Niles Police Department all add credence to Z.R.'s testimony.

[¶ 33} Additionally, the testimony of William Evans, the forensic polygraphist who administered the stipulated polygraph to Plevyak was also compelling. Evans testified he asked Plevyak four questions regarding his interactions with Z.R.: two of these questions involved the charges against Plevyak and two involved other acts evidence. Evans testified that Plevyak's responses to the two questions involving the charges against him were indicative of deception and that he was lying.

{¶ 34} In this case, the testimony of the victim, his mother, and the other witnesses is sufficient to "overwhelm" any error in admitting the other acts evidence. The first assignment of error is without merit.

*Plevyak*, 2014-Ohio-2889, ¶¶ 23-34.

To the extent Plevyak's claim alleges violations of Ohio evidentiary law, it is not cognizable on federal habeas review. Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (noting that federal habeas courts "do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence'" (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). Federal habeas courts presume that state courts correctly interpret state law in their evidentiary rulings. *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005). However, as noted above, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman*, 244 F.3d at 542; *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

19

Plevyak appears to argue that the state courts' rulings regarding the other acts evidence introduced at his trial resulted in a denial of fundamental fairness such that it violated his federal due process rights.  *See* ECF Doc. No. 12 at Page ID# 997 (citing *Bugh,* 329 F.3d at 512).  He contends that the state courts made "two separate and distinct errors of analysis" in their decisions to allow the evidence.  ECF Doc. No. 12 at Page ID# 997.

First, Plevyak complains that the trial court did not articulate on the record its application of the test required under Ohio law to determine whether other acts evidence is admissible, which, as the state appellate court explained, balances the probative value of the evidence against the danger of unfair prejudice resulting from its admission.  ECF Doc. No. 12 at Page ID# 997, 1000; *see also Plevyak*, 2014-Ohio-2889, ¶ 28.  He cites *Dowling v. United States*, 493 U.S. 342 (1990), which he says "emphasized" the importance of this balancing test that is "*required*" by Federal Evidence Rule 404(b).  ECF Doc. No. 12 at Page ID# 996-97 (emphasis original) (citing *Dowling*, 493 U.S. at 353-54).

This argument is misplaced.  Neither *Dowling* nor any other Supreme Court case of which the undersigned is aware holds that a trial court's failure to articulate, on the record, its application of the other acts balancing test is such an egregious error that it amounts to a due process violation.  Indeed, in *Dowling*, the Court found the admission of the other acts evidence at issue was *not* fundamentally unfair, "*[e]specially* in light of the limiting instructions provided by the trial judge . . . ."  *Dowling*, 493 U.S. at 353 (emphasis added).  Here, as the state appellate court emphasized, the trial court also gave the jury a limiting instruction regarding the other acts evidence, instructing that the evidence could not be considered to prove Plevyak's character or that he acted in conformity with that character.  *See Plevyak*, 2014-Ohio-2889, ¶¶ 30-31.  The court reasonably determined that the limiting instruction lessened any potential prejudice

resulting from the evidence's admission, and that the evidence's relevance to the events leading up to the crimes and probative value in showing that Plevyak committed the acts for the purpose of sexual gratification therefore "substantially outweighed" any danger of unfair prejudice. *Plevyak*, 2014-Ohio-2889, ¶¶ 29-31.

Second, Plevyak contends the other acts evidence at issue "was presented solely for the purpose of convincing the jury that the Petitioner had acted in conformity with his prior actions . . . ." ECF Doc. No. 12 at Page ID# 997. He first points to the prosecutor's statement in closing argument that "we know his intent because we know what kind of man he is. We know he could not keep it in his pants around this child literally." ECF Doc. No. 12 at Page ID# 997 (citing ECF Doc. No. 8 at Page ID# 960). This isolated comment during closing argument, however, does not demonstrate that the other acts evidence was presented only to prove Plevyak's character in order to show the crimes conformed to that character, and certainly does not rise to the level of a denial of fundamental fairness.

Plevyak also disputes the state appellate court's finding that the other acts evidence was admissible because it was "inextricably related" to the charged crimes and necessary to provide the jury with a "fair and accurate picture" of those crimes. ECF Doc. No. 12 at Page ID# 997-1002; *see Plevyak*, 2014-Ohio-2889, ¶¶ 25-26. He cites as support the Sixth Circuit's decision in *United States v. Hardy*, 228 F.3d 745 (6th Cir. 2000), which provided the following description of other acts evidence that falls under the "background circumstances" exception:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*. at 748. In *Hardy*, a federal drug conspiracy case, the circuit court found that the district court improperly admitted evidence of uncharged drug offenses as "background" evidence, but the evidence's admission was harmless in light of the overwhelming evidence against the defendant. *Id*. at 751.

The other acts evidence at issue in *Hardy*, however, is distinguishable from this case. In *Hardy*, the other acts occurred six years before the date the alleged conspiracy began. *Id*. at 749. Here, the other acts took place "weeks and months apart" from the charged crimes, much closer to the relevant time period than in *Hardy*. *Plevyak*, 2014-Ohio-2889, ¶ 17. Furthermore, the court found the other acts evidence in *Hardy* was "not necessary to explain the charged offense . . . [or] establish the charged conspiracy itself." *Hardy*, 228 F.3d at 749-50. In this case, the victim's testimony about Plevyak's earlier sexual advances clearly lent context and significance to the charged crimes, vividly demonstrating a pattern of escalating sexual misconduct and explaining the circumstances and environment in which the charged crimes occurred.

Plevyak argues that this evidence was not "inextricably related" to the charged crimes because the facts supporting the charged crimes "would [have been] perfectly comprehensible by the jury without any reference whatsoever" to the other acts evidence. ECF Doc. No. 12 at Page ID# 1001. This argument fails to persuade. Indeed, the evidence at issue falls squarely within *Hardy*'s definition of "proper background evidence." *See Hardy*, 228 F.3d at 751. The earlier sexual acts were "a prelude to" and "directly probative of" the charged offenses; they arose from similar circumstances as the charged offenses, namely, Plevyak babysitting the victim; and they formed an integral part of the victim's testimony, completing his story of the charged offenses. *Hardy*, 228 F.3d at 748. Thus, the state appellate court's ruling that the other acts evidence was

admissible to provide background was not so fundamentally unfair that it violated Plevyak's due process rights.

Finally, Plevyak challenges the state appellate court's finding that any error the trial court made in admitting the other acts testimony was harmless because the "remaining evidence provide[d] overwhelming proof of [Plevyak's] guilt." ECF Doc. No. 12 at Page ID# 1001-03; *Plevyak*, 2014-Ohio-2889, ¶ 32. The state court pointed to the victim's "compelling and credible" testimony, even without the other acts evidence, and discounted any inconsistencies in his story. *Plevyak*, 2014-Ohio-2889, ¶ 32. It also noted the corroborating testimony of the victim's mother, the Children Services caseworker, a police officer, and the forensic polygraphist who administered Plevyak's stipulated polygraph test. *Plevyak*, 2014-Ohio-2889, ¶¶ 32-33. The Ohio Court of Appeals' analysis was reasonable, containing nothing that is "so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh,* 329 F.3d at 512.

Accordingly, Plevyak has not demonstrated that the state appellate court's decision affirming the trial court's admission of other acts evidence violated his federal due process rights, and this claim is not cognizable on federal habeas review.

## VII.    Conclusion

Because Plevyak has presented only a non-cognizable claim and has not demonstrated that the state courts abridged his constitutional rights, I recommend that the Court DISMISS Plevyak's petition for writ of habeas corpus (ECF Doc. No. 1) in its entirety.

Dated: July 24, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).